333 So.2d 17 (1976)
Joan T. KERN, Appellant,
v.
Jack D. KERN, Appellee.
No. 47771.
Supreme Court of Florida.
May 26, 1976.
*18 Charles R. Holley, Naples, for appellant.
J. Blan Taylor of Taylor & Locker, Naples, for appellee.
PER CURIAM.
This is an appeal from a judgment rendered by the Circuit Court in and for Collier County. Our jurisdiction vests under Article V, Section 3(b)(1), Florida Constitution.
Appellant Joan and Appellee Jack Kern were married on June 5, 1954, in Oak Park, Illinois. They are the parents of six children, four of whom are minors. After moving many times since 1954, the Kerns, both ordained Unity ministers, came to Naples, Florida, where they organized a church of that denomination.
Jack Kern filed a petition for dissolution of marriage in the Palm Beach County Circuit Court on May 11, 1972. The court entered a default and final judgment granting the dissolution and awarding him custody of the minor children. This order was reversed on appeal. Kern v. Kern, 291 So.2d 210 (Fla.App. 4th 1974), cert. denied, 294 So.2d 657 (Fla. 1974). However, the minor children have continued to live with their father. On remand the trial court held a contested hearing, and thereafter Mrs. Kern moved for a change of venue to the Collier County Circuit Court; such transfer was ordered on August 26, 1974.[1]
The circuit court in Collier County held a motions hearing on June 9, 1975, and had trial the following day. The trial was continued until June 17, 1975, when the court rendered its decision. The marriage was found to be irretrievably broken, and Mr. Kern was awarded custody of the minor children and given exclusive possession of the marital home in which to reside until the youngest child reaches majority. The trial court set aside the previous conveyance of this property from Joan Kern to her husband, rendering it a tenancy in common. When the youngest child reaches majority, the property is to be sold, with the net proceeds divided equally. The court also denied Joan any monetary relief such as alimony, special equity or child support.
On this appeal Mrs. Kern seeks relief from all aspects of the trial court's ruling save for the dissolution order itself. She raises some fifteen points on appeal. We find that of these issues only the constitutional question which vests this Court with jurisdiction merits discussion.
*19 Section 61.20, Florida Statutes, reads as follows:
"Social investigation and recommendations when child custody is in issue.  In any action where the custody of a minor child is in issue, the court may request the [Department of Health and Rehabilitative Services] to make an investigation and social study concerning all pertinent details relating to the child and each parent. The [Department of Health and Rehabilitative Services] shall furnish the court with a written report with its recommendation with a written statement of facts found in its social investigations on which its recommendations are based. The court may consider the information contained in the report in making a decision on the child's custody and the technical rules of evidence do not exclude such report from consideration."
(Note: Prior to the abolition of the Division of Family Services, Chapter 75-48, Laws of Florida, the name of that agency appeared where that of H.R.S. now appears in the above statute, and the briefs discuss the role of D.F.S. in this connection.)
Appellant contends that the trial judge's consideration of such reports, which by their very nature contain hearsay and opinion statements otherwise inadmissible in a court of law, constitutes a denial of due process of law. She alleges further that the statute is an unconstitutional infringement of her right to confrontation of witnesses. In support of her position she cites a dissenting opinion in Green v. Green, 307 So.2d 246, 247 (Fla.App. 4th 1975), in which Judge Owen suggests that Section 61.20 authorizes a practice which "is so shockingly violative of fundamental due process safeguards that I feel the statute should be abolished forthwith."
The issue of the constitutionality of Section 61.20, Florida Statutes, has not been the subject of a reported appellate opinion. (The majority in Green, supra, a per curiam affirmance without opinion, did not discuss the statute's constitutionality.[2]) In the absence of such authority, we look to out-of-state cases on this subject and to a United States Supreme Court decision whose reasoning is applicable to the instant controversy. Such cases persuade us to take a view which differs from that expressed in the dissenting opinion in Green, supra.
At the outset we note the wide discretion reposed in the trial court where, as in the instant case, the future of young children is at stake. Because the credibility of witnesses and the weight of their testimony is best determined by the trial court, fact findings made by trial judges in child custody hearings should be accorded great weight. Grant v. Corbitt, 95 So.2d 25, 28 (Fla. 1956). The late Judge Kenneth Keating of the New York Court of Appeals recognized further that the unusual nature of this responsibility necessitates certain modifications in traditional trial proceedings:
"The burden on a Judge when he acts as parens patriae is perhaps the most demanding which he must confront in the course of his judicial duties. Upon his wisdom, insight and fairness rest the future happiness of his wards. The procedures of the custody proceeding must, therefore, be molded to serve its primary purpose and limited modifications of the traditional requirements of the adversary system must be made, if necessary. The test is whether the deviation will on the whole benefit the child by obtaining for the Judge significant pieces of information he needs to make the soundest possible decision." Lincoln v. Lincoln, 24 *20 N.Y.2d 270, 272, 299 N.Y.S.2d 842, 843-44, 247 N.E.2d 659, 660-61 (1969) (citations omitted).
By providing the trial court with potentially valuable information compiled by professional social workers, the instant statute constitutes a legislative cognition of the suitability of modified proceedings in this special area.
It has been held that, so long as such reports or a description of the contents thereof are made available to the parties, there is no violation of due process guarantees.[3] Trial courts have consistently been reversed, however, for considering such reports without notice to, or knowledge of, the parties. See, e.g., Dees v. Dees, 41 Wis.2d 435, 164 N.W.2d 282 (1969); McGuire v. McGuire, 140 So.2d 354 (Fla.App.2d 1962); Herb v. Herb, 8 A.D.2d 419, 188 N.Y.S.2d 41 (1959). Implicit in Section 61.20, Florida Statutes, of course, is a procedural due process requirement that when the trial court relies on such investigative reports, counsel for the parties should be given an opportunity to review the reports for purposes of introducing any evidence that might rebut the conclusions or recommendations which the reports contained. In the instant case, nothing prevented Mrs. Kern from calling as witnesses the case workers who prepared the reports as well as the persons whom they interviewed nor from attempting to discredit the methods used to reach conclusions adverse to her cause. There is no showing that such witnesses would have been unavailable at trial had they been subpoenaed. Yet their presence would not be necessary to make such evidence admissible:
"... [I]n general, it may be argued that the report itself is admissible under well-recognized exceptions to the hearsay rule. In fact, it may be doubted whether the report is within the hearsay ban at all. The dangers of faulty perception and narration seem alleviated by the social workers' special skills and training; falsification seems unlikely; and memory is unimportant if the report is more or less contemporaneous. A similar approach is suggested by numerous statutes providing that such reports shall be `competent' or `admissible' as evidence." (footnotes omitted)
Comment, Use of Extra-Record Information in Custody Cases, 24 U.Chi.L.Rev. 349, 357 (1957).
We note further that the United States Supreme Court has upheld a death sentence based partially on information not made available to counsel. While "open court testimony with cross-examination" is required when the issue is guilt or innocence of a particular offense, limiting a judge's consideration to such evidence in the determination of an appropriate sentence would be "totally impractical if not impossible," since such a deliberation should include the "fullest information possible concerning the defendant's life and characteristics." Williams v. New York, 337 U.S. 241, 247, 250, 69 S.Ct. 1079, 1083, 1084-5, 93 L.Ed. 1337, 1342, 1343-4 (1949). The Williams reasoning has been applied to permit consideration of secret reports and hearsay in proceedings to determine the future status of juveniles already found to be delinquent. E.g., In re Holmes, 379 Pa. 599, 109 A.2d 523 (1954); In re Halamuda, 85 Cal. App.2d 219, 192 P.2d 781 (1948). As *21 in such proceedings, the overriding concern in custody litigation between parents is again the child's welfare, and thus cases such as that before us today would also seem to call for the Williams result.
For the foregoing reasons we hold Section 61.20, Florida Statutes, to be a constitutional legislative recognition of the necessity for professional social workers' investigative skills and personal counseling as a means of furthering the trial court's search for just and humane results in this sensitive area.
We have carefully considered and analyzed the record, briefs, and arguments of counsel with respect to the remaining points on appeal and conclude that the trial court did not commit reversible error nor did he abuse his discretion in the conduct of the proceedings.
Accordingly, the judgment is affirmed.
OVERTON, C.J., and ROBERTS, ADKINS, BOYD, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
NOTES
[1] Decisions in other appeals taken by Mrs. Kern are reported at 309 So.2d 563 (Fla. App.2d 1975) and 311 So.2d 130 (Fla.App.2d 1975).
[2] We note that Green is distinguishable factually from the case sub judice because in Green "[t]he report, prepared and filed at the request of the court, was considered by the court in reaching its determination on the custody issue, although neither party had access to the report or its content." 307 So.2d at 247 (dissenting opinion).
[3] Jenkins v. Jenkins, 304 Mass. 248, 23 N.E.2d 405 (1939); Swain v. Swain, 250 Cal. App.2d 1, 58 Cal. Rptr. 83 (1967); Forslund v. Forslund, 225 Cal. App.2d 476, 37 Cal. Rptr. 489 (1964); Neb. Rev. Stat. § 42-307. In the instant case the reports were filed and made available to counsel for both parties, although apparently one was missing from the court file when sought by counsel at the June 9 motion hearing. The fact that this report was apparently viewed by the court in connection with an earlier hearing on temporary matters, but thereafter mislaid through inadvertence is not sufficient to convince us that the trial court's judgment should be reversed. See Burns v. Carricarte, 336 So.2d 1171 (Fla. 1976) (concurring opinion expressing views of four members of this Court).