479 So.2d 200 (1985)
In the Interest of N.C., C.P., and C.P., Children.
No. BF-255.
District Court of Appeal of Florida, First District.
November 22, 1985.
Nancy O'Connor, Legal Services of North Florida, Panama City, for appellant mother.
Arthur C. Wallberg, Asst. Atty. Gen., Tallahassee, for appellee Dept. of Health & Rehabilitative Services.
*201 James H. White, Jr., of Staats, Overstreet & White, Panama City, for appellee father.
ZEHMER, Judge.
In this child custody case the mother of three minor children appeals a circuit court order awarding physical custody of two of the minor children to their natural father. She argues that the trial court violated her due process rights by restricting her ability to present evidence to rebut recommendations contained in social investigative reports relied upon by the court in reaching its disposition. Finding that the court erred in excluding such evidence, we reverse and remand for further proceedings.
On July 6, 1984, a Department of Health and Rehabilitative Services (HRS) district intake counselor filed an affidavit for emergency shelter of the three minor children, alleging they were not being properly cared for by their mother and were living in a car on Panama City beach. The children were appointed a guardian ad litem, adjudicated dependent, and placed under the protective supervision of HRS. On October 31 the mother filed a motion requesting that the children be returned to her custody. A hearing on this motion was set for November 30, and notice was given to the mother. On November 21 a petition for custody was filed by the natural father of two of the children. This petition was served on the mother by mail to the address given by her to the court. Hearing on both petitions for custody were held on November 30, and counsel for the mother objected to consideration of the father's petition because it had not been actually served on the mother. Apparently the mother was not at the address given to the court. The court denied this objection and proceeded with the hearing on both petitions. One issue which arose at this hearing was an assertion of sexual abuse of one of the children by the father. The mother did not present any evidence at this hearing regarding the propriety of giving custody of the children to their father.
On December 3 the court entered an order denying the mother's petition for custody and deferring ruling on the father's petition pending completion and submission to the court of a home study requested by HRS. HRS's home study on the mother included an extensive psychological evaluation based upon testing and interviews by psychologist James E. Hord. The home study on the father included an evaluation of the father's home setting and a report from a consultation by a psychiatrist. Both the home study and the psychiatric consult were positive in terms of recommending the father's having custody of the children. The psychiatrist stated in his report, "I do not believe that [the father] has sexually abused his daughter. He appears sincerely concerned for the welfare of the children."
On January 24, 1985, the mother filed a motion seeking custody of her children and alleging that she had substantially complied with the terms of an HRS permanent placement plan. On February 11, 1985, the court heard oral argument regarding the father's petition for custody and the home studies submitted by HRS. At this hearing the mother moved the court to reserve judgment on the father's petition for custody because of newly discovered evidence in the form of a letter from Dr. Hord regarding the father's fitness to have custody of the children. In the letter Dr. Hord stated he had seen evidence that caused him to suspect sexual abuse by the father. Particularly, Dr. Hord indicated he had seen reports from a case worker in which there were allegations of either overt sexual abuse or extremely lenient behavior on the part of the father that exposed the children to sexual activities. Dr. Hord also stated:
More disturbing, I have seen a collection of photographs of the youngest girl, who was obviously posed in the nude wearing nothing but tennis shoes, in various parts of the house in both frontal and rear postures. In my opinion they are not the kind of photographs that an admiring parent would take of his child, but appear to be nude shots for the sake of nudity.
*202 Dr. Hord did not specifically state in the letter that these photographs were taken by the father. Dr. Hord further stated, "The possibility of future sexual misconduct should be more carefully evaluated than psychiatric consult would normally imply." He specifically cautioned those involved in the case that "many child abusers present very reassuring, intelligent, and competent appearances," and he recommended that "a psychological evaluation be obtained on this gentleman prior to any HRS endorsement of a placement with him."
The mother's counsel attempted to introduce this letter into evidence, but the court ruled that it would not consider any evidence sought to be admitted by the mother, would not consider her motion requesting the court to reserve ruling on the father's petition for custody, and would not consider her January 24 motion for custody. The court stated that the hearing would be restricted solely to oral argument regarding the home studies submitted by HRS and that if the home study of the father were acceptable to the court it would grant his petition for custody. The court indicated that any additional evidence the mother wished to submit could be submitted later, in conjunction with consideration of her motion for custody. After reviewing the home studies and hearing comments from the parties, the court entered an order granting the father "physical custody of said children ... with legal custody to remain in the State of Florida, Department of Health and Rehabilitative Services." No disposition was made with respect to the third child.
Section 39.001(2)(d), Florida Statutes (1983), recognizes that chapter 39 juvenile proceedings must accord with constitutional standards of fundamental fairness. Section 39.408(3), Florida Statutes (1984 Supp.), provides that in a disposition hearing in dependency proceedings the court may consider a predisposition study and "other relevant and material evidence, including other written or oral reports" to determine the action to be taken with regard to the child, and that such report "may be relied upon to the extent of its probative value, even though not competent in an adjudicatory hearing."
In Kern v. Kern, 333 So.2d 17 (Fla. 1976), a dissolution proceeding, the circuit court considered information in a special investigative report in determining appropriate custody of a minor child. On appeal the Supreme Court held that the lower court properly considered the social investigative reports, even though they included hearsay and opinion statements otherwise inadmissible in a court of law. The Supreme Court went on to state, however, that procedural due process requires that "counsel for the parties should be given an opportunity to review the reports for purposes of introducing any evidence that might rebut the conclusions or recommendations which the reports contained." Id. at 20. See Landers v. Landers, 429 So.2d 27 (Fla. 5th DCA 1983); In the Interest of A.Z., 383 So.2d 934 (Fla. 5th DCA 1980).
Unquestionably, the court below properly considered the home studies during the disposition hearing. The mother had a due process right, however, as recognized in Kern v. Kern, 333 So.2d 17, to submit additional testimony or evidence, oral or written, relevant to the issues addressed in the home study. It is immaterial whether the evidence would have been competent in an adjudicatory hearing because the standard governing admissibility of evidence is more lenient in a disposition hearing. § 39.408(3), Fla. Stat. (1984 Supp.). The mother attempted on several occasions during the February 11, 1985, disposition hearing to place in evidence a letter from Dr. Hord that was directly related to the issue of alleged sexual abuse and the father's fitness to have custody of the minor children. The trial court's refusal to consider this evidence in deciding to give the father custody of the children was a violation of the mother's and the children's right to a fundamentally fair hearing. More importantly, in the face of potential evidence of previous incidents of child abuse, the court erred in giving custody *203 to the father without fully exploring and determining the true facts about this issue.
The order of the trial court granting physical custody of the children to the father is reversed and the case remanded for further proceedings. On remand the trial court must afford the parties full opportunity to present evidence on the fitness of either parent to have custody of the children and determine whether custody should be given to the father, the mother, or foster parents under the supervision of HRS.
REVERSED and REMANDED.
MILLS and SHIVERS, JJ., concur.