IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

TAMMY LEE ANTICO,
PERSONAL
REPRESENTATIVE OF THE
ESTATE OF TABITHA
FRANCES GUYTON ANTICO,
DECEASED,

     Petitioner,

v.

SINDT TRUCKING, INC., AND
JAMES PAUL WILLIAMS,

     Respondents.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-277

Opinion filed October 13, 2014.

Petition for Writ of Certiorari—Original Jurisdiction.

Andrew J. Decker, IV, of The Decker Law Firm, P.A., Live Oak, and Bruce Robinson of Robinson, Kennon, Kendron, P.A., Stephen A. Smith, and Thomas T. Demas, Lake City, for Petitioner.

Albert J. Wollermann and Trudy Innes Richardson, Guilday, Schwartz, Simpson, West, Hatch & Lowe, P.A., Tallahassee, for Respondents.

OSTERHAUS, J.

     The petition in this matter seeks to quash a discovery order in a wrongful death action. Citing the privacy provision, article I, section 23, of the Florida

Constitution, and the rules of civil procedure, the personal representative of Tabitha Antico's estate (Petitioner) objects to an order entered by the trial court allowing Respondents' expert to conduct a limited inspection of the cell phone that Ms. Antico allegedly was using when an automobile accident caused her death. We conclude, however, that the order does not depart from the essential requirements of law and deny the petition.

## I.

On September 5, 2012, a truck operated by the Respondents collided with a vehicle driven by Ms. Antico and she was killed. Six months later, the decedent's estate filed a wrongful death action, but Respondents denied liability. Respondents asserted that the decedent was either comparatively negligent or was the sole cause of the accident because she was distracted by her iPhone. Numerous times Respondents requested data from the decedent's cellphone, which has been kept unused by the Petitioner since shortly after the accident. And while Respondents received some calling and texting records from the decedent's wireless provider, other cellphone data was not disclosed, such as use and location information, internet website access history, email messages, and social and photo media posted and reviewed on the day of the accident.

Respondents moved for an order from the trial court permitting an expert to inspect the cellphone's data from the day of the accident. Petitioner objected to the

cellphone inspection citing the decedent's privacy rights under the Florida Constitution. After a hearing, the trial court granted Respondents' motion.

The order allowing the inspection recognized both Respondents' discovery rights and the privacy interest asserted by the Petitioner. It stressed the relevance of the requested information, citing cell phone records showing that the decedent had been texting in the minutes preceding the accident; testimony from two witnesses indicating that the decedent may have been utilizing her cell phone at the time of the accident; and testimony from the responding troopers supporting the assertion that the decedent was using her cell phone when the accident occurred.

The order also recognized the decedent's privacy interests and set strict parameters for the expert's confidential inspection. It provided that the expert could examine the cellphone, at Respondents' expense, in the presence of Petitioner's counsel at an agreed date, place, and time. Petitioner's counsel could also video the inspection. The order enumerated the following steps to be followed by the expert:

(1) Install write-protect software to ensure no alteration of the phone's hard drive would be made during the inspection;

(2) Download a copy of the cell phone's hard drive, making a master copy, a review copy, a copy for Petitioner's counsel;

(3) Return the cell phone to Petitioner's counsel immediately after copying the hard drive;

3

(4) Review only the data on the hard drive for the nine-hour period permitted by the Court (including call records, text messages, web searches, emails sent and received, uploads, downloads, data changes and GPS data);

(5) Prepare a summary of the data reviewed, including type of data, use of data, date/time of data, and any other information s/he deems relevant.

(6) Provide the summary to Petitioner's counsel prior to the dissemination of any more specific findings. Petitioner's counsel shall have ten (10) days from service to file a Motion for Protective Order or other form of objection to the release of all or a portion of the data, citing grounds for each objection.

(7) If no objection is interposed by the Petitioner, then Respondents' expert may release his or her findings to Respondents' counsel.

The order suggested that the hard drive copying process would take between ten minutes and two hours. And only if Petitioner's counsel did not object could the expert make findings available to Respondents' counsel.

After the court granted Respondents' motion, Petitioner filed a timely petition for writ of certiorari.

## II.

### A.

As a threshold matter, a petition for writ of certiorari is the correct vehicle for reviewing Petitioner's privacy-related objections to the trial court's discovery order. We have noted previously that certiorari relief involving an order compelling discovery is available "when the order departs from the essential

4

requirements of law, causing irreparable harm that cannot be remedied on plenary appeal." Poston v. Wiggins, 112 So. 3d 783, 785 (Fla. 1st DCA 2013) (quoting Heekin v. Del Col, 60 So. 3d 437, 438 (Fla. 1st DCA 2011)). The irreparable harm part of this analysis is jurisdictional. Id. It is satisfied in this case because irreparable harm can be presumed where a discovery order compels production of matters implicating privacy rights. Rasmussen v. S. Florida Blood Serv., Inc., 500 So. 2d 533, 536–37 (Fla. 1987); see also Holland v. Barfield, 35 So. 3d 953, 956 (Fla. 5th DCA 2010) (having to disclose a computer hard drive and a cellphone SIM card demonstrates irreparable harm).[1] And so, Petitioner will be entitled to relief if the order below departs from the essential requirements of law.

B.

Petitioner argues that the cellphone inspection order violates the decedent's privacy rights and doesn't comport with the rules of civil procedure because it permits inspection of "all data" on the decedent's cellphone. Petitioner considers the inspection "an improper fishing expedition in a digital ocean."

Generally speaking, Florida Rule of Civil Procedure 1.280 allows for the discovery of matters that are relevant and admissible, or reasonably calculated to lead to admissible evidence, including electronically stored information. See Fla. R. Civ. P. 1.280(b)(1), (b)(3), 1.350 (2013); see also Fla. R. Civ. P. 1.280(d)

[1] See also Riley v. California, 134 S. Ct. 2473, 2489–91 (2014) (recognizing privacy interests in electronic information stored on a cellphone).

5

(addressing limitations on the discovery of electronically stored information). But where personal information is involved as in this case, the trial courts' discretion to permit discovery "must be balanced against the individual's competing privacy interests to prevent an undue invasion of privacy." McEnany v. Ryan, 44 So. 3d 245, 247 (Fla. 4th DCA 2010). Courts have reversed rulings for not adequately accounting for privacy interests in the inspection of electronic storage devices. See, e.g., Holland, 35 So. 3d at 955 (reversing an order allowing the inspection of a computer hard drive and cellphone SIM card); Menke v. Broward Cnty. Sch. Bd., 916 So. 2d 8, 12 (Fla. 4th DCA 2005) (reversing an order allowing the inspection of all computers in a household).

But, contrary to Petitioner's argument, privacy rights do not completely foreclose the prospect of discovery of data stored on electronic devices. Rather, limited and strictly controlled inspections of information stored on electronic devices may be permitted. See Menke, 916 So. 2d at 11 ("[Rule 1.350 is] broad enough to encompass requests to examine [electronic information storage devices] but only in limited and strictly controlled circumstances"); cf. Friedman v. Heart Inst. of Port St. Lucie, Inc., 863 So. 2d 189, 194 (Fla. 2003) (finding that privacy rights limit compelled disclosure to that which is necessary to determine contested issues). Both Holland and Menke, for instance, would have allowed for inspections of the devices involved (computers and cellphones) if: (1) there was evidence of

destruction of evidence or thwarting of discovery; (2) the device likely contained the requested information; and (3) no less intrusive means existed to obtain the requested information. Holland 35 So. 3d at 955; Menke, 916 So. 2d at 12.

C.

Which brings us to this case. The record here indicates that the trial court closely considered how to balance Respondents' discovery rights and the decedent's privacy rights. The order highlighted the relevance of the cellphone's data to the Respondents' defense and it set forth strict procedures controlling how the inspection process would proceed.

The context of Respondents' discovery request is quite important. The trial court didn't allow the inspection simply because Respondents made assertions that decedent was on her cellphone, or because the decedent happened to possess a cellphone in her car. This case does not involve an unanchored fishing expedition as Petitioner alleges. Rather, Respondents supported their motion to inspect the cellphone with specific evidence. Respondents cited cell phone records showing that the decedent was texting just before the accident; two witnesses indicated that the decedent may have used her cell phone at the time of the accident; and troopers responding to the accident lent support to the conclusion that the decedent was using her cell phone when the accident occurred. Additionally, no one has disputed

7

that the decedent's smartphone may contain very relevant information. As Respondents put it below:

> With GPS enabled phones, such as [the decedent's] iPhone, there is a very high probability that if the GPS feature were enabled, we can look at the data and figure out conclusively what happened in the moments leading up to the accident, i.e. whether she stopped at the stop sign or not and whether she was texting, Facebooking, Tweeting, or nothing at the time of the accident.

It's long been true that "[t]he more relevant and necessary the desired information is to a resolution of the case, the greater the state's interest in allowing discovery of the information." S. Florida Blood Serv., Inc. v. Rasmussen, 467 So. 2d 798, 803 (Fla. 3d DCA 1985), approved, 500 So. 2d 533 (Fla. 1987). And here, we agree with the trial court that Respondents' discovery request comports with the rules allowing for discovery of relevant information, including information from devices like cellphones, see Fla. R. Civ. P. 1.280(b)(1), and that their interest in the discovery of this particular data is quite substantial.

The other side of the equation—the countervailing privacy interest involved with the discovery of data on a cellphone—is also very important. See S. Florida Blood Serv., Inc., 467 So. 2d at 803 (recognizing the court's obligation to minimize the impact on competing interests). But we are satisfied that the order adequately safeguards privacy interests under the circumstances here where Petitioner was given the opportunity, but advanced no alternative plan. As detailed above, the trial court's order strictly controls how the confidential inspection must

8

proceed: it limits the data that the expert may review to the nine-hour period immediately surrounding the accident; it gives Petitioner's counsel a front-row seat to monitor the inspection process; and it allows Petitioner the opportunity to interpose objections before Respondents can obtain any of the data. This certainly isn't a case like Holland, for example, where the trial court's order allowed a respondent "to review, without limit or time frame, all of the information on [a] mobile phone SIM card without regard to [privacy rights and privileges]." Holland, 35 So. 3d at 956. See also Root v. Balfour Beatty Constr., 132 So. 3d 867, 870 (Fla. 2d DCA 2014) (warning against "carte blanche discovery").

We don't agree with Petitioner that the trial court erred by allowing Respondents' expert to first inspect the cellphone. See, e.g., Menke, 916 So. 2d at 12. Petitioner did not offer or argue to the trial court below to use its own expert. In fact, Petitioner remained silent at the hearing when the trial court openly stated its uncertainty about "who looks at [the cellphone], what they do with the information, who they report it to, [and] how we protect the privacy interest of the person [and provide] a chance to object to the dissemination, . . . I haven't got this all formed in my head yet." Though the trial court expressly invited Petitioner "to submit . . . language that you think would work that protects the privacy and interest," the order notes that Petitioner didn't propose "any less intrusive manner to obtain the requested data." The trial court was left ultimately to accept the

9

representation of Petitioner's counsel that he was "unable to obtain some of the requested information . . . from Plaintiff." Under these circumstances, where Petitioner offered nothing in response to the court's privacy concerns and open invitation to propose a different process, we cannot conclude that the trial court erred by allowing Respondents' expert retrieve the cellphone's data under limited and controlled conditions.

Finally, we find no error with the order having allowed the expert to review "all data" on the cellphone for the nine-hour period surrounding the time of the accident. While Petitioner has apparently possessed the cellphone since the accident, the trial court's order noted that she didn't "indicate the quantity, nature or type of any information on plaintiff's decedent's cell phone, or if any such information was, in fact, privileged." Nor did the Petitioner proffer "any less intrusive manner to obtain the requested data." It would appear that the only way to discover whether the decedent used her cellphone's integrated software at the time of the accident, or drafted a text, dialed a number, searched for contact information, reviewed an old message, or used any other of the smartphone's many features, is by broadly inspecting data associated with all of the cellphone's applications. Or, at least, if an effective and superior privacy-respecting plan for segregating inspection-permissible from -impermissible data exists, it hasn't been presented to the court. And so, we cannot conclude that the trial court violated the

10

essential requirements of law by permitting a thorough inspection of the cellphone for the nine-hour period on the day of the accident.[2]

### III.

For the foregoing reasons, the PETITION IS DENIED.

LEWIS, C.J., and THOMAS, J., CONCUR.

---

[2] We needn't resolve Respondents' additional contention that Petitioner lacks standing in this case to assert the decedent's constitutional privacy rights. The trial court didn't pass on this question. And, as discussed above, relief isn't warranted even if we assume (as this opinion does) that Petitioner can assert the decedent's privacy rights.