PER CURIAM.
Petitioner, Wife, seeks certiorari review of the trial court’s discovery order requiring her to disclose “all her records regarding treatment, diagnosis, care and medications from all her psychologists, psychiatrists, counselors, and medical doctors who have treated her for any mental health issues or prescribed pain medication or any mental health medications to her in the last seven (7) years.” The order also requires Wife to submit to deposition questioning and answer interrogatories with the same scope. We grant Wife’s Petition in part.
Certiorari Jurisdiction.
We have certiorari jurisdiction to review orders granting discovery that create a material injury not remediable on appeal and constitute a departure from the essential requirements of law. State, Dep’t of Children & Families v. B.D., 102 So.3d 707, 708 (Fla. 1st DCA 2012); Mullins v. Tompkins, 15 So.3d 798, 800 (Fla. 1st DCA 2009). Erroneous disclosure of medical records qualifies as irremediable harm. Scully v. Shands Teaching Hosp. & Clinics, Inc., 128 So.3d 986, 988 (Fla. 1st DCA 2014) (citing Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla. 1995); James v. Veneziano, 98 So.3d 697, 698 (Fla. 4th DCA 2012)).
Facts and Procedural History.
Upon filing for dissolution in 2012, the parties agreed to 50/50 timesharing of their minor child, born in 2008. The parties maintained 50/50 timesharing until February of 2015, when Husband initiated involuntary commitment proceedings against Wife under the Marchman Act,[1] alleging Wife abused prescription drugs, had been under the influence of drugs or medications while driving their child, and had exhibited suicidal tendencies and episodes of violence. He simultaneously moved to suspend 50/50 timesharing, based on the Marchman Act proceeding and his allega *1118 tions supporting it. The court gave him total parental responsibility, suspending Wife’s parenting time. After one day of Marehman Act evaluation, the examining physician’s report concluded there was “no documented abuse.”
Wife then moved to reinstate 50/50 time-sharing, which Husband opposed. Both parties consented to independent psychological evaluations pursuant to section 61.20 of the Florida Statutes.[2] The trial court appointed an independent psychologist, who obtained medical/psychological and counseling records, interviewed Wife and Husband separately, administered written tests, conducted home visits, and interviewed the head of the child’s school. He completed a written evaluation addressing the statutory factors of the child’s best interests. § 61.13(3), Fla. Stat. He recommended that the child continue to live with Husband until the end of the 2016 school year pending an updated evaluation, but that Wife should be given more time with the child during that time.
After an evidentiary healing, the trial court gave Wife some supervised timeshar-ing with the child, but the parties continue to dispute the proper timesharing. In connection with the continued dispute, Husband sought disclosure of Wife’s mental health records, asserting that Wife had placed her mental health at issue. Wife’s counsel argued that Wife had not placed her mental health at issue in a claim or defense, and that the requested discovery was overbroad and improper. Further, Wife’s counsel argued that any issues had already been addressed by the independent psychological exam to which both parties had agreed, eliminating any basis for the broad discovery Husband requested. Wife’s counsel requested an evidentiary hearing and in-camera review of any other mental health documents to determine whether they should be produced.
The Order Under Review.
In the order under review, the trial court granted Husband access to Wife’s mental health records for the past seven years, not limited to those provided to the independent psychologist, and without requiring in-camera review. We quash this order in part.[3]
(1) The Psychotherapist-Patient Privilege.
The parties agree that Wife has a psychotherapist-patient privilege under section 90.503(2) of the Florida Statutes as to confidential communications and records of mental health treatment or diagnosis. The issue is whether, and to what extent, it applies here. A court cannot set aside the privilege on the basis of “mere allegations of mental or emotional instability.” Oswald v. Diamond, 576 So.2d 909, 910 (Fla. 1st DCA 1991). Any invasion of the privilege must be limited to what is demonstrably necessary on the facts of each case. Further, where parenting is at issue, “[w]hat is relevant to the trial court’s determination regarding child custody is the parties’ present ability and condition.” Schouw v. Schouw, 593 So.2d 1200, 1201 (Fla. 2d DCA 1992) (emphasis added); see also Scully, 128 So.3d at 988-89 (requiring that discovery be limited to what is relevant and temporally related); O’Neill v. O’Neill, 823 So.2d 837, 840 (Fla. 5th DCA *1119 2002) (holding waiver of privilege is evaluated based on what occurs “during a pending custody dispute”). Previous substance abuse problems and treatment, without more, are insufficient to invade the privilege. Koch v. Koch, 961 So.2d 1134, 1135 (Fla. 4th DCA 2007).
Here, the trial court did not appropriately limit the temporal reach of its order, even assuming the facts otherwise justified overcoming the privilege. Husband’s most recent motion requested only three years’ worth of discovery, but the court granted access to seven years’ worth of records, without explaining why. In further proceedings, the parties and the trial court must focus on Wife’s present parenting ability and fitness. If older records are pertinent to present ability, the trial court may order disclosure upon proper findings; but there must be some basis for doing so.
(2) Waiver.
Next, we consider whether Wife waived her psychotherapist-patient privilege. A court may deem the privilege involuntarily waived under extreme circumstances. In O’Neill, for instance, an involuntary waiver occurred when the court found the existence of a “calamitous event” after a mother threatened to kill herself and her children and then voluntarily committed herself to a psychiatric ward. 823 So.2d at 840. See also Miraglia v. Miraglia, 462 So.2d 507, 507-08 (Fla. 4th DCA 1984) (allowing testimony of former wife’s psychiatrist following wife’s suicide attempt undertaken while final judgment of dissolution was pending on rehearing); Critchlow v. Critchlow, 347 So.2d 453, 455 (Fla. 3d DCA 1977) (finding wife’s voluntary commitment for mental health treatment during custody dispute constituted waiver).
It appears the trial court either deemed the Marchman Act proceeding itself a “calamitous event,” or relied on Wife’s behavior before the Marchman Act proceeding as constituting the “event.” At this juncture we need not determine whether a course of past conduct can constitute a “calamitous event.” If and only if Husband adduces appropriately recent competent evidence of a genuine “calamitous event” could the trial court properly evaluate the existence of such an event as a potential involuntary waiver of Wife’s privilege, and then only after an evidentiary hearing.[4]
(3) Effect of Independent Evaluation.
A separate issue is whether and to what extent Wife voluntarily waived her privilege by participating in the independent psychological evaluation contemplated in section 61.20 of the Florida Statutes. The independent evaluation process is intended to avoid the privilege-invasion that would result from disclosing past records. Leonard v. Leonard, 673 So.2d 97, 99 (Fla. 1st DCA 1996) (“[W]e reject the husband’s meritless assertion that both he and the independent examiner are entitled to take depositions and examine the records of mental health professionals who treated the wife and her son.”). See also Flood v. Stumm, 989 So.2d 1240, 1242 & n.1 (Fla. 4th DCA 2008) (noting that independent evaluation assists the trial court without invading psychotherapist-patient privilege) (citing Schouw, 593 So.2d at 1201). Although the independent valuation process is intended to avoid disclosure of past rec *1120 ords, records that the parties voluntarily give the independent evaluator lose their privileged status. See McIntyre v. McIntyre, 404 So.2d 208, 209 (Fla. 2d DCA 1981). Likewise, the parties’ communications to the evaluator are not privileged. § 90.503(4)(b), Fla. Stat.
Consistent with these principles, the parties agreed that both of them could discover records furnished to the independent psychologist, subject to protective order against outside disclosure or dissemination. They also agreed they would have the right to depose the independent psychologist, which the law allows. Kern v. Kern, 333 So.2d 17, 20 (Fla. 1976); see also Hill v. Hill, 371 So.2d 573, 575 (Fla. 1st DCA 1979) (applying Kern to child custody evaluation prepared by authorized state agency). Because of the parties’ agreement to provide records to the independent psychologist, and their failure to object to the scope of the order giving the psychologist access to records, we deny Wife’s petition insofar as the trial court’s order granted Husband access to records actually provided to the independent psychologist.
The trial court erred, however, in failing to limit disclosure of the parties’ records to those produced to the independent psychologist. This was a departure from the essential requirements of law because it improperly invaded Wife’s privilege. In further proceedings, the trial court may not allow disclosure of Wife’s privileged information without determining whether specific information is within the scope of the waiver resulting from Wife’s agreement to disclose records to the independent psychologist. Any disclosures beyond what Wife agreed to provide the independent psychologist may be ordered only upon a record of competent, appropriately relevant, and timely evidence showing an actual or involuntary waiver by the Wife within the meaning of the relevant authorities.
(4) In-Camera Review Required.
Florida courts consistently require in-camera review of medical records so the trial court can ensure that only relevant, timely documents are disclosed; and in this context, that only non-privileged documents or documents as to which the privilege has been waived are disclosed. Such an in-camera review is mandatory. Scully, 128 So.3d at989 (requiring in camera review); James, 98 So.3d at 698 (“[W]hen a party challenges a discovery order concerning material to which the party asserts his or her constitutional right to privacy, the trial court must conduct an in camera examination to determine the relevance of the materials to the issues raised or implicated by the lawsuit.”) (emphasis added) (citing Bergmann v. Freda, 829 So.2d 966, 967 (Fla. 4th DCA 2002)); Barker v. Barker, 909 So.2d 333, 338 (Fla. 2d DCA 2005) (finding departure from essential requirements of law by not holding in camera inspection of broad grant of medical records discovery). No documents may be disclosed to Husband or his counsel until after the trial court makes the required in-camera inspection to determine that every document disclosed is relevant, timely to the issue of Wife’s then-present fitness as a parent, and either not privileged or within a valid waiver of Wife’s privilege.
Order QUASHED.
WINSOR, J., CONCURS; KELSEY, J., CONCURS SPECIALLY WITH OPINION and MAKAR, J., CONCURS IN PART, DISSENTS IN PART WITH OPINION.

. The Marchman Act permits involuntary commitment and assessment for substance abuse issues. See generally §§ 397.301, .601, .675, Fla. Stat (2016).

. Section 61.20 authorizes the court to order a "social investigation and study” in actions where the parents cannot agree on a parenting plan, to gather relevant facts and make recommendations to the court. The court may consider the report and recommendations and may order additional study if the court determines that the investigation and study are insufficient. § 61.20(1), Fla. Stat.

. The trial court also entered a protective order, prohibiting dissemination or publication of any records produced, which we approve.

. Husband also asserted that Wife waived her privilege by attempting to set aside the parties’ settlement agreement for incapacity from an adverse reaction to Lunesta, which she had been prescribed and had taken before signing the agreement. Wife sought only to set aside the financial terms of that settlement, not putting her reaction to Lunesta at issue in relation to timesharing.