DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

ALEXANDER HALIKOYTAKIS,

Petitioner,

v.

FUTURE MOTION, INC.,

Respondent.

No. 2D2024-1499

_____

April 23, 2025

Petition for Writ of Certiorari to the Circuit Court for Hillsborough
County; Helene L. Daniel, Judge.

Eitan J. Goldrosen of Morgan & Morgan, P.A., Orlando, for Petitioner.

Michael R. Holt and Ligianette Cordova of Rumberger, Kirk & Caldwell,
P.A., Miami; and Allison Lange Garrison of Nilan Johnson Lewis PA,
Minneapolis, Minnesota, for Respondent.

BLACK, Judge.

Alexander Halikoytakis filed a petition for writ of certiorari

challenging the trial court's order denying his objections to Future

Motion, Inc.'s Notice of Mobile Phone Inspection and his request for

protective order. The trial court's order permits Future Motion to

conduct an inspection of the entire contents of Mr. Halikoytakis' mobile

phone pursuant to the protocol set forth in the Notice of Mobile Phone Inspection. For the reasons that follow, we grant the petition and quash the trial court's order.

Onewheel is a self-balancing, battery-powered transportation device that is designed, manufactured, and sold by Future Motion. Mr. Halikoytakis purchased a Onewheel from Future Motion on September 15, 2021. While riding his Onewheel on October 17, 2021, Mr. Halikoytakis was suddenly ejected from it, resulting in injuries. On February 2, 2022, Mr. Halikoytakis filed a complaint against Future Motion for strict liability and negligence. He requested economic damages and noneconomic damages.

On June 26, 2023, Mr. Halikoytakis was deposed by Future Motion's counsel. Mr. Halikoytakis testified, in pertinent part, that he neither emailed nor texted with anyone other than his counsel about the incident or his injuries. He also testified that he had not posted anything on social media about the incident and had not joined any Onewheel social media groups. Mr. Halikoytakis had downloaded the Onewheel app on his mobile phone. As such, Future Motion's counsel asked whether he had used the app while riding his Onewheel, and Mr. Halikoytakis responded, "Hardly." He was then asked if he had recorded any rides using the app, and Mr. Halikoytakis responded: "I believe there may have been a ride or 2 recorded. I'm not sure." However, Mr. Halikoytakis was certain that he had not recorded the ride that was the subject of the lawsuit. Moreover, Mr. Halikoytakis had not been using his mobile phone at the time of the incident; he believed it had been in his pocket. Mr. Halikoytakis was asked generally about his responses to Future Motion's requests for production. He testified that he had "provided whatever [his] counsel requested of [him]" and that he did not

2

"think [that he had] intentionally left anything out." Mr. Halikoytakis further testified that other than the video of the incident itself—which he had previously provided to Future Motion—he did not have any photos or videos of himself riding his Onewheel.[1] Prior to the deposition, Mr. Halikoytakis had also provided Future Motion with, among other things, a photo of the Onewheel app, a screenshot of one screen within the Onewheel app, emails pertaining to his purchase of the Onewheel, and photos of the Onewheel and his injuries.

On May 1, 2024, Future Motion filed a Notice of Mobile Phone Inspection pursuant to Florida Rule of Civil Procedure 1.350, demanding that Mr. Halikoytakis produce to a data acquisition company his mobile phone that had been in use from September 15, 2021, to April 17, 2022. The notice further required that Mr. Halikoytakis provide all of his login credentials so that forensic images of electronically stored information could be created. The only limitation placed on the extent of the data extraction was the time period during which the data was either created or modified. In that respect, the notice provides that "[s]uch analysis shall be limited to forensic images created or modified between September 15, 2021, through April 17, 2022." The inspection protocol set forth in the notice also permitted Future Motion to

> analyze whether [Mr. Halikoytakis] retained, opened, accessed, copied, transferred, or deleted any files identified as a result of the searches performed, including whether [Mr. Halikoytakis] retained or deleted any emails, texts, messages, videos, or photographs relating to Future Motion, the

---

[1] Mr. Halikoytakis' home security system recorded the incident, as he had been riding his Onewheel near his home when the incident occurred. But because the system does not retain recordings for more than thirty days, Mr. Halikoytakis took a video of it using his mobile phone. The video of the recording was provided to Future Motion.

Onewheel board, the incident, the scene, his injuries, his recovery, or his claims.

Any information extracted by the data acquisition company would first be provided to Mr. Halikoytakis' counsel for review and possible redaction/withholding based on privilege, work product, or confidentiality concerns.

Mr. Halikoytakis objected to Future Motion's demand for inspection of his mobile phone and moved for a protective order, arguing in pertinent part that the inspection was not warranted because Future Motion had failed to assert or establish that he had destroyed evidence or thwarted discovery, that his mobile phone was likely to contain relevant information, and that no less intrusive means existed for obtaining the information.

Thereafter, Future Motion filed a memorandum of law in opposition to Mr. Halikoytakis' objections and request for protective order. Future Motion asserted in part that protocols would be followed for the protection of confidential and privileged information and that Mr. Halikoytakis had "produced relatively little discovery." According to Future Motion, "[t]he narrowness of [Mr. Halikoytakis'] production suggests more responsive information—non-privileged communications, media, and social media content—will be recovered from [his] phone upon inspection." Future Motion further argued that the inspection of Mr. Halikoytakis' mobile phone would lead to the discovery of relevant information, including information relating to Mr. Halikoytakis' "purchase and pre-incident operation of the Onewheel," "[t]he subject incident," "[p]ost-incident communications about the cause of the accident," Mr. Halikoytakis' "injuries and recovery," and Mr. Halikoytakis' damages, "including his broad claim for 'non-economic damages, mental

4

anguish, emotional distress, [and] pain and suffering.' " (Last alteration in original.) Notwithstanding communication between Mr. Halikoytakis and his counsel, Future Motion acknowledged that Mr. Halikoytakis had testified during his deposition that he had not disclosed any information about the incident in text messages, in emails, or on social media but asserted that he had not been asked by Future Motion's counsel "about *all* potentially relevant data stored on his phone" and that the "limited deposition testimony does not operate to preclude Future Motion from conducting additional discovery that is specifically authorized by Rule 1.350(a)." Future Motion also acknowledged that Mr. Halikoytakis had testified during his deposition that he had not been using his phone at the time of the incident but asserted that "[c]ontemporary human experience demonstrates that people use their electronic devices to capture every detail of their lives" and that if Mr. Halikoytakis' "phone contains such relevant information . . . [it] is authorized by Rule 1.350 to inspect the phone and copy the data, regardless of whether [Mr. Halikoytakis] was using his phone during the subject incident." Future Motion argued that no less intrusive means exists to obtain the information because it had already made discovery requests and Mr. Halikoytakis had "responded with a less than fulsome production." Future Motion also contended that an inspection of Mr. Halikoytakis' mobile phone would reveal relevant information captured in the Onewheel app and that Mr. Halikoytakis' mobile phone is the only source of the Onewheel app data.

A hearing on Mr. Halikoytakis' objections to the inspection and motion for protective order was held on June 3, 2024. The arguments presented during the hearing largely mirrored those raised in the filings addressed above. Mr. Halikoytakis argued that the demand for

5

inspection of his mobile phone amounted to a fishing expedition, as the evidence showed that he had not texted or emailed anyone about the incident or referenced the incident on social media. He also argued that there was no evidence suggesting that he had destroyed evidence or thwarted discovery and that subpoenaing his mobile phone carrier would be a less intrusive means of obtaining the sought-after information. Mr. Halikoytakis argued that while Future Motion characterized his discovery responses as "less than fulsome," it had not moved to compel better or more thorough responses.

In response, Future Motion argued that Mr. Halikoytakis had destroyed evidence because he had failed to retain the original security system recording of the incident. And while Future Motion conceded that it did not expect to find the original recording on the phone, it argued that "it's not accurate to say that all discovery that's available in this case, that's responsive, extremely relevant to the case is available to [it]." The court asked Future Motion to respond to Mr. Halikoytakis' argument that the inspection of the phone was not likely to result in the discovery of relevant information given his deposition testimony. Future Motion responded that it had not asked—and had not been required to ask—Mr. Halikoytakis about all forms of discovery during the deposition. The court asked Future Motion what it "hope[d] to find" while "explor[ing]" the mobile phone, and Future Motion responded as follows:

> Responsive information about [Mr. Halikoytakis'] use of the Onewheel, about the incident itself, about his injuries and recovery, and about his broad scope of damages. Contemporary experience demonstrates that people communicate and use their mobile phones to record the most minute details of their lives.
> It stands to reason that something as important as a personal injury that results in a lawsuit would be something

6

that a person would discuss.  And so what we're looking for is responsive information that we have no evidence that Mr. Halikoytakis or his counsel have explored, have investigated on their own.

In denying Mr. Halikoytakis' objections to the inspection and motion for protective order, the trial court found as follows:

> As in all things having to do with discovery, the court is always required to balance the privacy rights of a person, a party, against the rights of the other parties who have the right, as in this case, [to] defend against the claim made by [Mr. Halikoytakis], and to conduct some kind of discovery that may lead to some of the admissible evidence.
>
> Of course, we don't know until we go through the process.  The court finds, here, that in light of the limited information that's been available or that has been made available to [Future Motion] at this time, the court is compelled to give [Future Motion] the ability to explore information that may be available on [Mr. Halikoytakis'] phone, especially because of the manner in which this exploration is going to take place is to ensure that actually [sic] [Mr. Halikoytakis'] counsel maintains control and advises whether or not the information discovered on the phone is private or not.
>
> And therefore, by virtue of the proposed manner in which this information is going to be cultivated, [Future Motion] has made its case that it is entitled to at least engage in some discovery to see if there is anything there to be had or to be found or to be later used at trial.

Following the hearing, the trial court issued a brief order permitting Future Motion to inspect Mr. Halikoytakis' mobile phone pursuant to the protocol Future Motion had set forth in its Notice of Mobile Phone Inspection.  This certiorari proceeding followed.

> "Certiorari review of a discovery order is appropriate when it 'departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal.' "  *Bright House Networks, LLC v.*

> *Cassidy*, 129 So. 3d 501, 505 (Fla. 2d DCA 2014) (quoting *Ameritrust Ins. Corp. v. O'Donnell Landscapes, Inc.*, 899 So. 2d 1205, 1207 (Fla. 2d DCA 2005)). Only if the challenged order causes irreparable harm to the petitioner, conferring jurisdiction to this court, do we consider whether the trial court departed from the essential requirements of the law in entering it. *Bright House Networks*, 129 So. 3d at 505.

*Harborside Healthcare, LLC v. Jacobson*, 222 So. 3d 612, 615 (Fla. 2d DCA 2017). Here, irreparable harm can be presumed because the inspection of Mr. Halikoytakis' mobile phone implicates his privacy rights. *See Antico v. Sindt Trucking, Inc.*, 148 So. 3d 163, 165 (Fla. 1st DCA 2014) (citing *Rasmussen v. S. Fla. Blood Serv., Inc.*, 500 So. 2d 533, 536-37 (Fla. 1987)); *see also Wharran v. Morgan*, 351 So. 3d 632, 636-37 (Fla. 2d DCA 2022) ("The right to privacy . . . protects cell phone data. . . . [B]ecause the right to privacy is implicated by the production of a broad sweep of Wharran['s] cell phone records, the jurisdictional prong for certiorari relief is met."). Moreover, "[u]nder the basic principles for evaluating discovery in Florida, the party seeking discovery must establish that it is (1) relevant to the case's subject matter, and (2) admissible in court or reasonably calculated to lead to evidence that is admissible in court." *Root v. Balfour Beatty Constr. LLC*, 132 So. 3d 867, 869-70 (Fla. 2d DCA 2014) (first citing Fla. R. Civ. P. 1.280(b)(1); and then citing *Allstate Ins. v. Langston*, 655 So. 2d 91, 94 (Fla. 1995)). And "an order that entitles a party to carte blanche discovery of irrelevant material demonstrates the type of irreparable harm that may be remedied via petition for writ of certiorari." *Harborside Healthcare, LLC*, 222 So. 3d at 615 (quoting *Root*, 132 So. 3d at 869).

Where personal information is sought, "the trial courts' discretion to permit discovery 'must be balanced against the individual's competing privacy interests to prevent an undue invasion of privacy.' " *Wharran*,

8

351 So. 3d at 637 (quoting *Antico*, 148 So. 3d at 166). "[T]he party seeking to obtain the private information has the burden of establishing need sufficient to outweigh the privacy interest." *Id.* (quoting *Nucci v. Target Corp.*, 162 So. 3d 146, 153 (Fla. 4th DCA 2015)); *accord Roque v. Swezy*, 390 So. 3d 193, 197 (Fla. 3d DCA 2024) ("Where, as here, a reasonable expectation of privacy exists for the information, data or items ordered to be disclosed, a trial court is required to balance this right against the need for the discovery, and the burden is on the party seeking disclosure to establish that the invasion of privacy is warranted, and the least intrusive means are utilized to obtain the discovery sought."). And while an inspection of a mobile phone may be permissible, such an inspection must be "limited and strictly controlled." *See Menke v. Broward Cnty. Sch. Bd.*, 916 So. 2d 8, 11 (Fla. 4th DCA 2005) (citing *Strasser v. Yalamanchi*, 669 So. 2d 1142, 1145 (Fla. 4th DCA 1996)); *accord Antico*, 148 So. 3d at 166 ("[P]rivacy rights do not completely foreclose the prospect of discovery of data stored on electronic devices. Rather, limited and strictly controlled inspections of information stored on electronic devices may be permitted.").

In *Strasser*, which involved a lawsuit between doctors, the plaintiff sought to inspect the defendant's computer system to determine if purged data could be retrieved; the data had been purged in the ordinary course of business to make room on the system's hard drive. 669 So. 2d at 1143-44. The Fourth District granted the petition for writ of certiorari and quashed the trial court's order permitting an inspection of the computer system because the order "allowed plaintiff unrestricted access to defendant's computer system, including all of his programs and directories, without protection for any privileged or confidential information and without safeguards or restrictions to minimize any

potential harm to the computer system." *Id.* at 1143. However, the Fourth District suggested that the entire computer system could be inspected under certain circumstances:

> If plaintiff can present evidence to demonstrate the likelihood of retrieving purged information, and if the trial court finds that there is no other less intrusive manner to obtain the information, then the computer search might be appropriate. In such an event, the order must define parameters of time and scope, and must place sufficient access restrictions to prevent compromising patient confidentiality and to prevent harm to defendant's computer and data bases.

*Id.* at 1145. Relying in part on *Strasser*, the court in *Menke* further explained:

> Where a need for electronically stored information is demanded, such searching should first be done by defendant so as to protect confidential information, unless, of course, there is evidence of data destruction designed to prevent the discovery of relevant evidence in the particular case. In fact, in the few cases we have found across the country permitting access to another party's computer, all have been in situations where evidence of intentional deletion of data was present.

916 So. 2d at 12 (citing *Strasser*, 669 So. 2d at 1145). In other words, and as recognized in *Antico*, courts are inclined to permit inspections of mobile phones and computers if "(1) there was evidence of destruction of evidence or thwarting of discovery; (2) the device likely contained the requested information; and (3) no less intrusive means existed to obtain the requested information." *See Antico*, 148 So. 3d at 166 (first citing *Holland v. Barfield*, 35 So. 3d 953, 955 (Fla. 5th DCA 2010); and then citing *Menke*, 916 So. 2d at 12).

Here, there is no evidence to suggest that Mr. Halikoytakis thwarted discovery. *See Holland*, 35 So. 3d at 955 (stating that although

10

respondents argued that petitioner had thwarted discovery by failing to produce any documents responsive to the request for production, no evidence was presented demonstrating that to be the case). And while it is undisputed that Mr. Halikoytakis failed to retain the original recording of the incident, no evidence suggests that he intentionally deleted it. *See Menke*, 916 So. 2d at 12. In fact, he took a video of the original recording using his mobile phone and provided that video to Future Motion. But even if his failure to ensure the original recording was retained constitutes destruction—a finding not made by the trial court—Future Motion acknowledged at the hearing that it did not expect to find the original recording on the mobile phone. *Cf. Strasser*, 669 So. 2d at 1144. Nonetheless, under certain circumstances and where the proper balance between privacy rights and discovery rights is struck, the search of a mobile phone may be permitted even where there is no evidence that discovery has been thwarted or evidence destroyed. *See Antico*, 148 So. 3d at 166-68.

In *Antico*, the personal representative of the estate of the decedent filed a petition for writ of certiorari challenging a discovery order that permitted the defendants to inspect the decedent's mobile phone; the inspection was limited to a nine-hour time period. *Id.* at 164. The First District denied the petition, holding that the trial court had properly balanced the defendants' discovery rights with the decedent's privacy rights since the trial court had "highlighted the relevance of the cellphone's data to the [defendants'] defense and it set forth strict procedures controlling how the inspection process would proceed." *Id.* at 166. In reaching that conclusion, the First District emphasized the importance of the context of the defendants' discovery request:

11

The trial court didn't allow the inspection simply because [defendants] made assertions that decedent was on her cellphone, or because the decedent happened to possess a cellphone in her car. This case does not involve an unanchored fishing expedition as [the personal representative] alleges. Rather, [defendants] supported their motion to inspect the cellphone with specific evidence. [Defendants] cited cell phone records showing that the decedent was texting just before the accident; two witnesses indicated that the decedent may have used her cell phone at the time of the accident; and troopers responding to the accident lent support to the conclusion that the decedent was using her cell phone when the accident occurred. Additionally, no one has disputed that the decedent's smartphone may contain very relevant information.

*Id.* at 166-67.

Unlike in *Antico*, Mr. Halikoytakis does dispute that his phone contains relevant information; he contends that his deposition testimony established that relevant information does not exist on his phone. And evidence akin to that which was produced in *Antico* in support of the request for mobile phone inspection is wholly lacking here. *See also Root*, 132 So. 3d at 869 ("The requested discovery[—copies of postings on plaintiff's Facebook page—]also appears at this time to be irrelevant to Root's claims for loss of consortium. Although Root's deposition has been taken, Defendants do not point to anything claimed by her in support of their contention that the requested information is relevant and discoverable."). The trial court seemingly recognized that Future Motion's request for inspection resembled a fishing expedition when it asked Future Motion what it hoped to find while exploring the phone. *Cf. id.* at 870 ("Significantly, one defendant's argument to the magistrate who heard the discovery issues supports Root's contention that the requested discovery constitutes a fishing expedition. The defendant's

attorney stated, 'These are all things that we would like to look under the hood, so to speak, and figure out whether that's even a theory worth exploring.'  Even the magistrate acknowledged that relevancy might be a problem, noting that '95 percent, or 99 percent of this may not be relevant.' ").  And Future Motion's general assertions about people's tendency to capture and share every aspect of their lives falls far short of justifying such an intrusion into Mr. Halikoytakis' privacy.  *Cf. Roque*, 390 So. 3d at 197-98 ("[T]he the burden is on the party seeking disclosure to establish that the invasion of privacy is warranted, and the least intrusive means are utilized to obtain the discovery sought. . . . Requiring the imaging and production of the entire contents of one's cellphone cannot be justified merely because it is the quickest and most efficient method to obtain the discovery sought.  If this were the threshold, we daresay every party in every civil case would issue such a request for production as its very first discovery salvo.").

Notably, the trial court did not find that relevant information was likely to be found on the mobile phone.  *See Wharran*, 351 So. 3d at 639. Rather, it determined only that Future Motion should be permitted to inspect the phone to see what information "may be available" on it. Nonetheless, even if there may be *some* relevant information on Mr. Halikoytakis' mobile phone, allowing a sweeping, almost unfettered search of the phone and extraction of all data, including data that has been deleted, necessitates that the petition for writ of certiorari be granted under the circumstances of this case.  *See Langston*, 655 So. 2d at 95 ("[W]e do not believe that a litigant is entitled *carte blanche* to irrelevant discovery."); *cf. Tanner v. Hart*, 313 So. 3d 805, 808 (Fla. 2d DCA 2021) (recognizing that while some of the medical records in petitioner's possession may be relevant to some of the issues in the

litigation, "requiring disclosure of 'any and all' records [for almost a ten-year period] casts too wide a net" such that relief from the discovery order was warranted); *Roque*, 390 So. 3d at 195-98 (granting petition for writ of certiorari and quashing order allowing inspection and extraction of entire contents of petitioner's mobile phone (including deleted data) even though the order allowed petitioner's counsel to withhold privileged and irrelevant information from production where respondent did not satisfy its burden of establishing that the inspection was warranted, the trial court did not find and there was no evidence presented to suggest that evidence had been destroyed or discovery thwarted, and the trial court did not find the inspection to be the least restrictive means of obtaining the information sought); *Holland*, 35 So. 3d at 955-56 (granting petition for writ of certiorari and quashing order allowing for unfettered access to computer hard drives and mobile phone SIM cards where there was no evidence of thwarting—despite respondent's assertion that petitioner had failed to produce documents responsive to her request for production—and there existed a less intrusive means of obtaining the discovery and the discovery order did not protect against privileges); *Menke*, 916 So. 2d at 12 ("Because the order of the administrative law judge allowed the respondent's expert access to literally everything on the petitioner's computers, it did not protect against disclosure of confidential and privileged information. It therefore caused irreparable harm, and we grant the writ and quash the discovery order under review. We do not deny the [respondent] the right to request that the petitioner produce relevant, non-privileged, information; we simply deny it unfettered access to the petitioner's computers in the first instance."). Moreover, although Future Motion's inspection protocol permitted Mr. Halikoytakis' counsel to view the extracted data first for redaction based

14

on privilege, work product, and confidentiality, that safeguard alone is not sufficient to protect Mr. Halikoytakis' privacy rights. *See Roque*, 390 So. 3d at 198-99 ("We do not ignore the fact that the trial court attempted to fashion a procedure it believed would limit the extent of the invasion of Roque's privacy rights by requiring the contents of the cellphone be provided in the first instance only to Roque's attorney, who would then cull through the contents of the cellphone to determine what relevant and non-privileged information, data and other items should be produced to Swezy. But requiring that the entire contents of Roque's cellphone be imaged by a forensic expert (consisting of every photo, video, text, email, note, download, and all data and metadata, including every deleted item) and requiring disclosure of it to Roque's own attorney, is simply insufficient, without more, to protect Roque's privacy rights and ensure that she is not compelled to disclose to anyone the entirety of her life's experiences and innermost thoughts as captured, created, uploaded or stored on her cellphone, without the requesting party first meeting the standards established to justify such compelled production."); *cf. Tanner*, 313 So. 3d at 808 & n.1 ("The trial court departed from the essential requirements of law by compelling disclosure of nearly ten years' worth of categorically inclusive medical information without first determining its relevance and balancing the need for such information against Ms. Tanner's constitutionally-protected privacy interests. . . . The requirement that the parties execute a confidentiality agreement limiting access to the documents to counsel and retained experts does not affect this conclusion. Medical records may not be disclosed to opposing parties *or* their counsel until *after* the trial court reviews the records in camera to determine their relevance." (citing *Zarzaur v. Zarzaur*, 213 So. 3d 1115, 1120 (Fla. 3d DCA 2017))).

Petition granted; order quashed.

LUCAS and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.