SILBERMAN, Judge.
In this breach of contract action brought by the Cassidys, Bright House Networks, LLC, seeks certiorari review of a discovery order that compels it to disclose alleged trade secrets. Because disclosure of a trade secret can cause irreparable harm and the trial court departed from the essential requirements of the law, we grant the petition.
Bright House is a cable service provider whose predecessor in interest entered into a contract with the Cassidys in 1984. The contract states that the cable service provider “shall perpetually provide all channels provided by the cable service and programming including all future channels to each of the following Cassidy family members at their place of residence anywhere in a [Bright House] service area free of any and all charges and costs.”
In January 2010 Bright House terminated all free cable services to the Cassidys. In a separate lawsuit for declaratory judgment and breach of contract, a federal court determined that the Cassidys were entitled perpetually to the same level of cable services that Bright House was providing before the termination of those services in January 2010. Judgments for damages were entered against Bright House for the value of the services the Cassidys should have received but did not due to the termination of services. Bright House paid the judgments and issued a *503 1099 form to each of the Cassidys for the year 2011. Bright House had never issued 1099s to the Cassidys previously.
After Bright House issued the 1099s, the Cassidys filed this action against Bright House for breach of contract, alleging that Bright House breached its duty to provide the cable services “free of any and all charges and costs.” Thus, the issue is whether any taxes incurred by the Cassi-dys due to the issuance of the 1099 forms constitute a “charge” or a “cost” in violation of the contract. The Cassidys further alleged that Bright House selectively provided 1099s to the Cassidys but did not provide 1099s “to the voluminous number of customers who receive free services from Defendant based upon business relationships and other considerations provided to Defendant.”
The Cassidys served their first interrogatories and first request for production of documents on Bright House. In interrogatory numbers 3 and 4 the Cassidys requested the following:
8. Please list the names and addresses of all persons or entities who have received any complimentary cable services from you at any time during the last three years while residing in or otherwise doing business in ... (a) Polk County, Florida; ... (b) The State of Florida (outside of Polk County, Florida); and ... (c) The United States of America (outside of the State of Florida).
4. For every person or entity identified in your answer to interrogatory number 3, please list by name all of those to whom you have ever issued a 1099 and, for each, state the year for which you first issued a 1099.
In document request number 3 the Cassi-dys requested that Bright House produce any 1099s issued to persons or entities identified in interrogatory number 4. In document request number 4 the Cassidys requested production of “any and all correspondence, records, or other documents that you reference in any of your answers” to the first set of interrogatories.
Bright House filed answers and objections to the interrogatories and stated interrogatory numbers 3 and 4 exceeded the scope of permissible discovery under Florida Rule of Civil Procedure 1.280 and further objected that the interrogatories sought “confidential and/or proprietary information of third parties and/or Bright House.” Bright House also objected to the request for production to the extent it sought “documents containing information regarding trade secrets, confidential and/or proprietary business information, and/or information subject to confidentiality agreements with non-parties.”
The Cassidys filed a motion to compel answers to interrogatories and response to the request for production. At a hearing on the motion on November 15, 2012, Bright House argued that the issue in the case was a legal issue of what does “free” mean and that it was unnecessary to know how many other contracts Bright House entered into with other customers. Bright House asserted, “That implicates confidential and sensitive, protected business information; and that has absolutely no bearing on what the Court’s — the scope of the Court’s job in this case.” Later Bright House again asserted that it would be improper for the court to order discovery of
this confidential and sensitive information about who we’ve entered into other contracts with, who we may have given better discounts to.
This is a very competitive business, both amongst us and our customers — our competitors and our customers. We can’t simply give out this information, particularly in this case, when it would *504 have no bearing on the Court’s interpretation on this clear and unambiguous contract. They want to know which contracts we’ve entered into in the entire state of Florida, and in fact across the entire United States.
They want to know to whom we’ve issued 1099s for. Again, how is this ever going to be relevant in this case?
When the Cassidys responded to Bright House’s argument, they did not address the issue of confidential infonnation. The trial court granted the motion to compel, stating that Bright House’s objections were “not well-founded.” Bright House asked for clarification of whether the court was ordering Bright House to “identify other customers that we may have entered into contracts with for the — for the provision of complimentary services.” The trial court replied, “Yes, because if there’s something you’re maintaining that is confidential, well, then, you know, you have the right to make a confidential log on that, and, you know, submit that to the Court.” But the court stated that it did not find “any grounds for that at this point.” In its written order compelling Bright House to answer the interrogatories and produce the documents, the court stated the ruling was without prejudice to Bright House claiming confidentiality with respect to those documents, “but if Defendant chooses to do so, it may redact what it perceives to be confidential and provide a log to opposing counsel and the Court in order to determine if the redacted information is, indeed, confidential.”
Bright House served supplemental answers and responses to the discovery. Bright House asserts in its petition that it avoided the issue of confidentiality by “taking the issue completely off the table.” Rather than disclosing the identity of customers receiving discounts, Bright House stipulated in its answer to interrogatory number 3
that there exists a significant number of recipients of discounted/complimentary cable services for one reason or another, including public libraries, schools, governmental organizations, employees and other entities or individuals associated with managing or providing access to multi-account developments. To the extent the number could be accurately calculated, it would constitute confidential and protected business information and [be] unnecessary given the foregoing stipulation.
As to interrogatory number 4 Bright House answered that, although irrelevant to the issues in the case, “for various reasons it has not issued, nor was it necessarily required to issue 1099s to other recipients of discounted or complimentary services.” It further stated “that in circumstances wherein it has subsequently been determined that a 1099 should have been provided but was not, this may have been a mistake, and the issue is being further analyzed.” Bright House admitted it issued 1099s to the Cassidys in 2011 and produced them.
The Cassidys filed a second motion to compel, and the trial court heard the motion on February 22, 2013. The Cassidys argued that Bright House’s answers were nonresponsive and that they were entitled to Bright House’s list of customers who received discounted services. They further argued that they wanted to see what arrangements Bright House had with these other customers. Bright House maintained that “who we enter into other agreements with and the terms of those agreements are very confidential.” Bright House again stipulated that it had served no other customers with 1099s who received some complimentary service.
*505 The trial court granted the second motion to compel in its entirety without making any specific rulings on Bright House’s objections regarding confidential and proprietary information. The order directed Bright House to provide the discovery to the Cassidys, and Bright House filed this timely petition for writ of certiorari.
Certiorari review of a discovery order is appropriate when it “ ‘departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal.’ ” Ameritrust Ins. Corp. v. O’Donnell Landscapes, Inc., 899 So.2d 1205, 1207 (Fla. 2d DCA 2005) (quoting Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995)). We first address the jurisdictional issue of whether the order creates irreparable harm. Harley Shipbuilding Corp. v. Fast Cats Ferry Serv., LLC, 820 So.2d 445, 448 (Fla. 2d DCA 2002). If the jurisdictional requirement is met, we then consider whether the trial court departed from the essential requirements of law. Id.; see also Ameritrust, 899 So.2d at 1207.
Bright House argues that its customer lists are confidential business information and constitute trade secrets. “Orders improperly requiring the disclosure of trade secrets or other proprietary information often create irreparable harm and are thus appropriate for certiorari review.” Grooms v. Distinctive Cabinet Designs, Inc., 846 So.2d 652, 654 (Fla. 2d DCA 2003). The Cassidys contend that Bright House did not preserve this issue for review because Bright House did not utter the phrase “trade secret” at either hearing on the motions to compel.
The record reflects that in its written objections and at the hearings, Bright House made the trial court and the Cassi-dys well aware that it was contesting the disclosure of customer information regarding discounted services because it was confidential, proprietary business information. And in Bright House’s original written response to the request for production, Bright House objected to the requests “to the extent that they seek documents containing information regarding trade secrets, confidential and/or proprietary business information.” We conclude that Bright House’s arguments in the trial court preserved the issue for review. Because Bright House contends that the order improperly requires the disclosure of trade secrets or other proprietary information, we have jurisdiction for certiorari review and turn to whether the trial court departed from the essential requirements of law.
The Florida Evidence Code contains a privilege against the disclosure of trade secrets. See § 90.506, Fla. Stat. (2012). When a party objects to the disclosure of a trade secret, first a court must determine whether the requested information is, in fact, a trade secret. Summitbridge Nat’l Invs. LLC v. 1221 Palm Harbor, L.L.C., 67 So.3d 448, 449 (Fla. 2d DCA 2011); Ameritrust, 899 So.2d at 1207. Usually this determination requires the trial court to perform an in camera review of the information. Summitbridge, 67 So.3d at 449; Ameritrust, 899 So.2d at 1207.
Second, if the trial court determines that the information is a trade secret, then the court must determine if the party requesting the information has shown a reasonable necessity for the information. Ameritrust, 899 So.2d at 1207. This court has explained that “[c]ompelled disclosure through discovery must be limited to items necessary for a court to determine contested issues.” McDonald’s Rests. of Fla., Inc. v. Doe, 87 So.3d 791, *506 793 (Fla. 2d DCA 2012). If the court orders disclosure, it must make findings to support its determination. Ameritrust, 899 So.2d at 1207. Furthermore, the trial court may need to order safeguards to prevent the unnecessary dissemination of the information. Summitbridge, 67 So.3d at 451.
Section 688.002(4) Florida Statutes (2012), defines a trade secret as follows:
(4) “Trade secret” means information, including a formula, pattern, compilation, program, device, method, technique, or process that:
(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
A customer list that is not readily ascertainable by the public can be a trade secret. East v. Aqua Gaming, Inc., 805 So.2d 932, 934 (Fla. 2d DCA 2001); Kavanaugh v. Stump, 592 So.2d 1231,1232 (Fla. 5th DCA 1992); East Colonial Refuse Serv., Inc. v. Velocci, 416 So.2d 1276, 1278 (Fla. 5th DCA 1982).
Here, the trial court ordered disclosure without an in camera review or making any findings regarding whether the disputed information was privileged as a trade secret or whether the Cassidys had shown sufficient necessity to overcome the privilege. We therefore grant the petition for writ of certiorari. However, we recognize that an in camera review of a list of names and addresses may not be helpful in determining whether Bright House’s list of customers who have received discounted service is a trade secret.
Bright House argues that its compilation of information is confidential in the very competitive cable industry and that it acquired the information through the pursuit of its business strategy and the course of many confidential negotiations with customers. We have no record evidence of these assertions. Thus, the trial court may need to conduct a further hearing to determine whether the customer compilation is a trade secret. If the trial court finds that the information is a trade secret, then the court must balance the necessity for the information in the litigation against protecting the confidential information. Grooms, 846 So.2d at 655. For the information to be necessary to the litigation, it of course must be relevant and either admissible at trial or “reasonably calculated to lead to the discovery of admissible evidence.” Fla. R. Civ. P. 1.280(b)(1). In determining necessity for the information, the trial court should consider the significance of Bright House’s stipulation that it has given discounted service to numerous customers but has not provided 1099s to anyone other than the Cassidys. See East Colonial, 416 So.2d at 1278 (stating that although the respondent contended that discovery of the corporation’s customer list was relevant to the allegation that part of his job was to obtain new business, “petitioner has admitted this allegation and respondent has failed to show sufficient necessity to overcome petitioner’s privilege”).
Accordingly, we grant the petition and quash the order compelling discovery with respect to interrogatories 3 and 4 and the request to produce as it relates to those interrogatories.
Petition granted and order quashed in part.
VILLANTI and LaROSE, JJ., Concur.