NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LEWIS TREE SERVICE, INC.,                    )
                                             )
            Petitioner,                      )
                                             )
v.                                           )          Case No. 2D20-493
                                             )
ASPLUNDH TREE EXPERT, LLC,                   )
f/k/a ASPLUNDH TREE EXPERT CO.,              )
                                             )
            Respondent.                      )
                                             )
_____  )

Opinion filed September 25, 2020.

Petition for Writ of Certiorari to the Circuit
Court for Hillsborough County; Steven Scott
Stephens, Judge.

Joseph H. Lang, Jr., and Kevin P. McCoy of
Carlton Fields, P.A., Tampa, for Petitioner.

Jamie Billotte Moses, Kristin N. Royal, and
David E. Cannella of Holland & Knight, LLP,
Orlando, for Respondent.


VILLANTI, Judge.

        Lewis Tree Service, Inc., petitions for a writ of certiorari to quash the trial

court's order that granted the motion to compel production of documents filed by

Asplundh Tree Expert, LLC, in this dispute between two competitors.  Because the trial

court failed to conduct an *in camera* review of the documents before ordering their

production despite Lewis Tree's assertion that the documents contained protected trade secret information, we grant the petition, quash the order compelling production, and remand for further proceedings.

## Background

Lewis Tree and Asplundh are competitors in the field of vegetation management, which generally includes tree pruning and removal, right-of-way clearing and maintenance, and emergency storm removals for cities, counties, and utility companies. Both Lewis Tree and Asplundh had contracts with Duke Energy in the north central region of Florida, with each covering different portions of the larger region. These contracts were set to expire at the end of 2017, and both Lewis Tree and Asplundh intended to bid for new contracts.

In late 2017, Asplundh fired one of its supervisors, Juan Angel Garza, for reasons unrelated to the current dispute. While employed with Asplundh, Garza had a signed noncompete agreement. Nevertheless, shortly after he was fired, Garza allegedly started working with Lewis Tree as a "consultant" in violation of the terms of this noncompete agreement, and he allegedly began recruiting Asplundh's foremen and skilled workers on behalf of Lewis Tree. Allegedly as a result of Garza's efforts and those of the foremen he recruited, more than sixty Asplundh employees—primarily the higher-skilled climbers—abruptly quit in late September and early October 2017, with the majority of them going to work for Lewis Tree, leaving Asplundh's north central region severely understaffed.[1]

_____

[1]The allegations in this paragraph are taken from Asplundh's complaint and some very limited background comments provided by counsel for both parties at the hearings that underlie this dispute. Our summary of these allegations should not be

In response to this mass exodus, Asplundh sued Garza for breach of his noncompete agreement. It also sued several of the former Asplundh foremen for breach of their duty of loyalty to Asplundh based on their alleged recruitment of the skilled workers. In count four of its amended complaint, Asplundh sued Lewis Tree for tortious interference with Garza's noncompete agreement. And in count five, Asplundh alleged that Lewis Tree, Garza, and the foremen conspired to convince the skilled workers to breach their duty of loyalty to Asplundh. By the time of the events giving rise to this petition, the trial court had granted summary judgment in favor of Lewis Tree on the tortious interference claim, leaving the only claim against Lewis Tree as it having conspired with Garza and the foremen to "steal" Asplundh's skilled workers.

At that point in the litigation, with only this one claim remaining against Lewis Tree, Asplundh served Lewis Tree with a request for production of the complete set of bid documents that Lewis Tree had submitted for the Duke Energy contract in late 2017. The alleged relevance of these bid documents requires a somewhat complicated explanation. In the "short" version, Asplundh contended that its draft bid for the new Duke Energy contract had been prepared as of October 3, 2017. When the foremen and skilled workers abruptly quit to work for Lewis Tree, Asplundh had to increase its bid to cover the unanticipated new labor costs that arose from this loss of management and skilled labor. Thus, the final bid Asplundh submitted to Duke Energy on October 4, 2017, was higher than its October 3 draft bid. Duke Energy representatives had testified at deposition that the only reason Lewis Tree was awarded the contract over

viewed as an indication of our opinion concerning their truth or falsity. They are provided solely to frame the issue presented in this certiorari petition.

Asplundh was because Lewis Tree's bid was lower. Asplundh contended that if its October 3 draft bid was lower than Lewis Tree's final bid, then Asplundh could prove that it lost the Duke Energy contract as a result of Lewis Tree's conspiracy to "steal" its skilled workers. Thus, Asplundh contended that Lewis Tree's bid documents were relevant and necessary to prove both causation and Asplundh's damages and so they should be discoverable. When Lewis Tree balked at disclosing the requested documents, Asplundh filed a motion to compel.

The trial court held two hearings on Asplundh's motion. At the hearings, Lewis Tree argued that bids for vegetation management contracts are not bottom-line bids. Instead, as best can be gleaned from the arguments made by counsel,[2] bidders prepare a matrix of prices per unit for various units of work, with the prices including specified components for labor and equipment costs. Each unit represents a different type of vegetation management need. The number of the different types of units to be provided are not specified in the contract; instead, they are determined during the term of the contract based on the needs that arise during the contract period. Hence, based on the arguments of counsel at the hearing, it appears that the bids submitted are similar to a guaranteed price list per unit, and the bid includes granular details of the labor and equipment cost components that comprise the different unit prices. Therefore, according to Lewis Tree, its bid documents—including all of those granular details—could be examined by Asplundh and reverse-engineered to identify Lewis Tree's proprietary bid development process, which it contended was a trade secret.

---

[2]Neither parties' bid documents are in the record provided to this court. Therefore, we are limited to the description of the documents provided by the parties' counsel at the hearings.

Based on these assertions, Lewis Tree asked the trial court to review its bid documents *in camera* and to provide it with an opportunity to explain how those documents could be used by a competitor to discover trade secret information and thus gain a competitive advantage in future bids. Lewis Tree also argued that producing the entirety of the bid documents was not reasonably necessary to Asplundh's case. In turn, Asplundh argued that no such *in camera* review was necessary because a bid was not a trade secret as a matter of law. During the hearing, Asplundh showed the court what it said was a partial copy of its own bid documents so that the court could see the type of information included in the bid; however, Asplundh characterized its documents as a "demonstrative exhibit," it refused to allow Lewis Tree to see the documents it gave to the court, and those documents were not introduced into evidence or otherwise made a part of the record before this court.

After the trial court reviewed the documents shown to it by Asplundh, Lewis Tree again requested that the court conduct an *in camera* review of its bid documents and then allow Lewis Tree an opportunity to explain how they could be utilized to reveal protected trade secret information. Despite this request, the trial court refused to conduct an *in camera* review of the bid documents. Instead, the court simply found the bid documents to be relevant to Asplundh's remaining claim, and it concluded that Lewis Tree would not be harmed by production of the documents because there was a stipulated confidentiality agreement in place covering all discovery in the case. This petition followed.

**Analysis**

A writ of certiorari is appropriately granted when the trial court has made a ruling that departs from the essential requirements of the law that results in harm through the remainder of the case which cannot be remedied on postjudgment appeal. See, e.g., Parkway Bank v. Fort Myers Armature Works, Inc., 658 So. 2d 646, 649 (Fla. 2d DCA 1995). Certiorari is particularly appropriate for "cat out of the bag" discovery orders that would require the disclosure of information that is privileged or otherwise protected from disclosure. See Allstate Ins. Co. v. Langston, 655 So. 2d 91, 94 (Fla. 1995) (quoting Martin-Johnson, Inc. v. Savage, 509 So. 2d 1097, 1100 (Fla. 1987)); Bright House Networks, LLC v. Cassidy, 129 So. 3d 501, 505 (Fla. 2d DCA 2014) ("Orders improperly requiring the disclosure of trade secrets or other proprietary information often create irreparable harm and are thus appropriate for certiorari review." (quoting Grooms v. Distinctive Cabinet Designs, Inc., 846 So. 2d 652, 654 (Fla. 2d DCA 2003))). Here, Lewis Tree asserts that the trial court's order departs from the essential requirements of the law because it requires the production of trade secret information without the court having conducted the analysis necessary to ensure that such information is properly discoverable. On the record here, we agree.

Section 90.506, Florida Statutes (2019), sets forth Florida's trade secret privilege and provides, in pertinent part:

> A person has a privilege to refuse to disclose, and to prevent other persons from disclosing, a trade secret owned by that person if the allowance of the privilege will not conceal fraud or otherwise work injustice. When the court directs disclosure, it shall take the protective measures that the interests of the holder of the privilege, the interests of the parties, and the furtherance of justice require.

- 6 -

To ensure that this privilege is properly protected, courts have set forth a three-step analysis for trial courts to undertake when faced with a claim that a discovery request seeks the production of protected trade secret information.  In the first step, the trial court must determine whether the information requested constitutes or contains trade secret information.  See Ameritrust Ins. Corp. v. O'Donnell Landscapes, Inc., 899 So. 2d 1205, 1207 (Fla. 2d DCA 2005).  This step will usually—but not always—require the court to conduct an *in camera* review of the documents to determine whether, in fact, they contain trade secret information.  Id.; see also Summitbridge Nat'l Invs., LLC v. 1221 Palm Harbor, L.L.C., 67 So. 3d 448, 449 (Fla. 2d DCA 2011).  Generally, if the parties agree that the documents contain trade secret information, no *in camera* review would be necessary.  See, e.g., Sea Coast Fire, Inc. v. Triangle Fire, Inc., 170 So. 3d 804, 808 (Fla. 3d DCA 2014).  However, if the parties disagree as to whether the requested documents contain trade secret information, an *in camera* review or evidentiary hearing will generally be needed.  Id.

If the court determines in this first step that the request seeks information subject to the trade secret privilege, the second step of the analysis requires the court to determine "whether the party seeking production can show reasonable necessity for the requested information."  Ameritrust Ins. Corp., 899 So. 2d at 1207.  This step generally "requires a trial court to decide whether the need for producing the documents outweighs the interest in maintaining their confidentiality."  Sea Coast Fire, Inc., 170 So. 3d at 809.  This is a fact-specific analysis that will depend on the issues in the case and the nature of the discovery requested.

Finally, if the court determines that there is a reasonable necessity for production of trade secret information, the third step requires the court to determine what safeguards, such as a confidentiality order, should be put in place to properly protect that information. See § 90.506 ("When the court directs disclosure, it shall take the protective measures that the interests of the holder of the privilege, the interests of the parties, and the furtherance of justice require." (emphasis added)); see also Cassidy, 129 So. 3d at 505-06; McDonald's Rests. of Fla. v. Doe, 87 So. 3d 791, 794 (Fla. 2d DCA 2012); Summitbridge, 67 So. 3d at 449; Ameritrust Ins. Corp., 899 So. 2d at 1207; Sea Coast Fire, Inc., 170 So. 3d at 809. Because these steps are sequential, it is only after the trial court has determined that the requested documents contain trade secret information and that production of those documents is reasonably necessary that the court should consider what confidentiality protections are appropriate.

In this case, however, the record shows that the trial court turned the three-step process on its head. When Asplundh disputed whether Lewis Tree's bid documents contained trade secret information, Lewis Tree asked the court to conduct an *in camera* review of the documents to determine whether they did in fact contain protected trade secret information. However, the trial court refused this request. Instead, the court told Lewis Tree that it would conduct an *in camera* review only after Lewis Tree established that its bid documents contained trade secret information. This decision ignores the fact that the entire purpose of the *in camera* review is to determine whether the requested documents contain trade secret information. Hence, the trial court never conducted the analysis required by step one. Instead, the trial court proceeded directly to step three and simply ordered production of the bid documents

- 8 -

because they were subject to a stipulated confidentiality agreement. The trial court's decision to wholly dispense with the first step of a three-step process constitutes a departure from the essential requirements of the law that justifies relief by certiorari.[3]

In this appeal, as it did in the trial court, Asplundh contends that no *in camera* review was necessary because Lewis Tree's bid documents could not constitute a trade secret as a matter of law. But this is incorrect. What constitutes trade secret information is defined by the Uniform Trade Secrets Act and includes

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Summitbridge, 67 So. 3d at 450 (quoting section 688.002(4), Florida Statutes (2010), and applying it to a trade secret dispute under section 90.506). Based on that definition, this court has held that while the "terms of a secret bid" might not constitute protected trade secret information because they are not a formula, pattern, compilation, program, method, or process, other information contained in bid documents "such as a code for

---

[3]Arguably, the trial court dispensed with the analysis required by step two as well. While the parties argued at length during the hearing about whether Asplundh "needed" the entirety of Lewis Tree's bid documents, the trial court never made any specific findings on the issue. And because the decision to be made in step two requires the court to determine whether the articulated need for the documents outweighs the opposing party's interest in maintaining their confidentiality, it is difficult to see how such a weighing could occur in the absence of the court having first determined whether the documents actually contain trade secret information. Nevertheless, because the trial court clearly refused to conduct the analysis required by step one, we need not address the sufficiency of the court's analysis of step two.

determining discounts, rebates or other concessions in a price list or catalogue, or a list of specialized customers, or a method of bookkeeping or other office management" could in some cases constitute protected trade secret information. Id. (quoting Restatement (First) of Torts § 757 cmt. b (1939)). Thus, while a bottom-line bid and its general terms might not constitute trade secret information, if the bid documents reveal information about the bidder's underlying calculations or bid development process, the documents might in some circumstances contain protected trade secrets.

Here, Lewis Tree argued that the nature of the bid documents for vegetation management work and the level of detail required by Duke Energy are such that the information contained in them could be reverse-engineered to reveal Lewis Tree's proprietary bid development process. Whether this argument is correct or not cannot be determined as a matter of law. Instead, it can be determined only after an *in camera* review of the bid documents themselves. See, e.g., Sea Coast Fire, Inc., 170 So. 3d at 808 (noting that when there is a dispute concerning whether the requested information contains trade secrets, an *in camera* review or evidentiary hearing is generally necessary). Therefore, Asplundh's argument that Lewis Tree's bid documents do not constitute trade secrets as a matter of law is simply incorrect.

In the alternative, Asplundh contends that the trial court did not depart from the essential requirements of the law because it did, in fact, determine that Lewis Tree's bid documents did not contain trade secrets based on its review of the documents Asplundh showed the court during the hearing.[4] But the transcript of the second hearing flatly contradicts this argument.

---

[4]Asplundh refused to put these documents into evidence, claiming they

- 10 -

Toward the end of the hearing when the court was discussing whether to permit Lewis Tree to file the requested documents under seal, the court stated:

> I'm still not sure I know what, if any, of this information is going to qualify to go under seal as a trade secret because, you know, if it's pricing information, clearly the trade secret protection attaches to the process of making the bid and formulating what all businesses formulate is how high can we push the price up so we maximize the revenues without losing the job.
>
> And that's a guessing game that all companies involved in the bidding process is ultimately going to play, and they justifiably want to keep their bidding process very secret because if the other side knows it, then you pretty much lose by definition, so that I understand.
>
> But the prices that were charged in a bid that was let out two years ago and that's isn't due to let be let out again anytime soon, as far as I know.  Nobody's brought that to my attention.· It seems like it has less protection, and I'm not sure if it qualifies for protection for trade secret.
>
> It does qualify for whatever protection your confidentiality order affords it, so I don't know that you can get me to do an *in-camera* review unless I find that it's a trade secret.· I'm not sure I'm ready to do that for this particular motion.

(Emphasis added.)  Thus, the transcript makes it clear that the trial court expressly did not make any determination as to whether Lewis Tree's bid documents contained trade secret information.  Accordingly, Asplundh's alternative argument is not supported by the record before this court and cannot preclude relief from the trial court's order.

---

were intended to be only a demonstrative exhibit, and it has also not included the documents in its appendix to this court.  Hence, we have no way to know what documents Asplundh actually showed the court, whether they reflected the entirety of the documents that it was requesting that Lewis Tree produce, and whether the documents would or would not support a conclusion that Lewis Tree's bid documents did not include trade secret information.

**Conclusion**

In sum, because the record before this court reflects that the trial court refused to conduct an *in camera* review of Lewis Tree's bid documents to determine whether they contained trade secret information before ordering their production, we hold that the trial court departed from the essential requirements of the law. Accordingly, we grant the petition and quash the trial court's order. On remand, the trial court should conduct an *in camera* inspection of the requested bid documents to determine whether they contain trade secret information. If so, the trial court must consider whether Asplundh's need for the documents outweighs Lewis Tree's interest in maintaining the confidentiality of its trade secret information and, if so, whether disclosure subject to the stipulated confidentiality agreement constitutes sufficient protection.

Petition granted.


CASANUEVA and SLEET, JJ., Concur.